[No. F063840. Fifth Dist. Feb. 15, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
OLIVIA STEPHANIE TORRES, Defendant and Appellant.

COUNSEL

Deborah Prucha, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DETJEN, J.**— ██ Defendant Olivia Stephanie Torres contends she should have been sentenced to county jail pursuant to Penal Code section 1170, subdivision (h), rather than to state prison.[1] The Attorney General agrees. We do not. Instead, we hold that when a sentence that otherwise would have been served in county jail pursuant to section 1170, subdivision (h) is ordered to run concurrently to a sentence already being served in state prison, the entire sentence must be served in state prison. This is so even though the sentence that was imposed first would have been served in county jail had it been imposed on or after October 1, 2011.

## PROCEDURAL HISTORY[2]

On January 12, 2010, defendant was charged, by complaint filed in Fresno County Superior Court case No. F10900198, with receiving stolen property (§ 496, subd. (a); counts 1 & 2), possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 3), and possessing a smoking device (*id.*, § 11364; count 4). In addition, it was alleged defendant had served a prior prison term (§ 667.5, subd. (b)) following her convictions, on July 17, 2006, for false personation (§ 529) and transportation or sale of methamphetamine (Health & Saf. Code, § 11379). On February 19, 2010, she pled guilty to possession of methamphetamine and admitted the enhancement. The remaining counts were dismissed, and she was placed on probation, on various terms and conditions, pursuant to section 1210.1.

On April 27, 2011, defendant was charged, by first amended complaint filed in Fresno County Superior Court case No. F11902076, with residential burglary (§§ 459, 460, subd. (a); count 1), receiving a stolen motor vehicle (§ 496d, subd. (a); count 2), possessing methamphetamine (Health & Saf.

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] The facts of the offenses are not pertinent to this appeal.

Code, § 11377, subd. (a); count 3), and possessing cocaine (*id.*, § 11350, subd. (a); count 4). In addition, it was alleged defendant had served a prior prison term (§ 667.5, subd. (b)).

On or about May 4, 2011, defendant was sentenced to two years in state prison, in Tulare County Superior Court case No. VCF251855, following her conviction of commercial burglary (§ 459) and forgery (§ 476).

On October 20, 2011, defendant pled no contest, in Fresno County Superior Court case No. F11902076, to receiving a stolen motor vehicle. It was stipulated she would receive a term of two years, to run concurrently with the term she was already serving in the Tulare County case. The remaining counts and allegations were dismissed, although, as a result of the plea, defendant was found in violation of probation in Fresno County Superior Court case No. F10900198. The trial court and both counsel expressed uncertainty about whether, upon defendant's completion of her sentence in the Tulare County case, she would be sent back to the Fresno County jail to complete her term in the Fresno County cases, or be kept in prison. The trial court confirmed that, in the Tulare County case, defendant was sentenced prior to October 1, 2011, for an offense that, had she been sentenced on or after that date, would have been sentenced pursuant to section 1170, subdivision (h).

On November 18, 2011, defendant was sentenced in both Fresno County cases. The trial court imposed the stipulated two-year term in each, and ordered the sentence in case No. F10900198 to run concurrently with the sentence imposed in case No. F11902076, and the sentence in those cases to run concurrently with the Tulare County term.

The following colloquy took place during the sentencing hearing:

"[PROSECUTOR]: . . . This case would be AB 109 case.[3] She is serving the time at CDC[4] because it was pre AB 109 so we're sentencing her to two years. I believe she's going to serve the remainder of her Tulare [C]ounty case at CDC. I think we're all presuming they're going to send her back here.

"THE COURT: I'm not presuming that. I don't know the answer to that. You may have a crystal ball.

---

[3] Assembly Bill No. 109 (2011–2012 Reg. Sess.) enacted "the '2011 Realignment Legislation addressing public safety' [citation] which, together with subsequent related legislation, significantly changed the sentencing and supervision of persons convicted of felony offenses." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 668 [143 Cal.Rptr.3d 742], fn. omitted.)

[4] California's Department of Corrections, now California's Department of Corrections and Rehabilitation (CDCR).

"[PROSECUTOR]: I don't but I'm thinking of following the money and because it's probably a housing issue that that's what they would do.

"THE COURT: That may very well be the case. Your position is?

"[PROSECUTOR]: I think this sentence should be AB 109 sentence.

"THE COURT: I disagree with you. Only because she currently—how much time left on Tulare [C]ounty sentence?

"[DEFENSE COUNSEL]: Six more months she indicates. [¶] . . . [¶]

"THE COURT: My recollection at least we hoped that I was given was that they're still serving a state prison term that they're going to finish that term and any re-term in support now. I guess my question is what difference does it make?

"[PROSECUTOR]: It doesn't. I just want to make it clear that could be potential issue.

"THE COURT: Do you understand, Ms. Torres, you're caught in the jaws here of a pretty significant some would say monumental change in sentencing law that occurred on October first of this year. This crime I'm going to sentence you would be both of these crimes that I'm going to sentence you for . . . would normally be under new law served in the Fresno County Jail and not in the California Department of Corrections, but it is my belief because you are serving a current term out of Tulare. What was the crime for in Tulare? It was before October first. It was not excludable crime—prior to October first sentencing. [¶] . . . [¶]

". . . That crime you were sentenced for Tulare in May. Had you been sentenced after October first in Tulare you would have gone to Tulare County Jail not to California Department of Corrections and Rehabilitation. What [the prosecutor] is saying it's an open case. I believe because you're currently serving a CDCR term that they will take you on this new commitment even though you would have gone to Fresno County Jail. That's not going to happen because you haven't finish[ed] this prison term out at CDCR. It could happen when you finish your Tulare County commitment but they ship you back to the Fresno County Jail to finish this term. That's all [the prosecutor] was saying.

"THE DEFENDANT: Yeah, I understand.

"[DEFENSE COUNSEL]: That's her preference AB 109.

"THE COURT: I don't believe it's up to me so I'm going to tell you it's up to CDCR. I'm going to sentence you CDCR on this term because you're already there and what happens when complete Tulare [C]ounty term—frankly I'm not sure." (*Sic.*)

Defendant was sentenced to prison in both Fresno County cases.

## DISCUSSION

The 2011 realignment legislation (realignment) "shifted responsibility for housing and supervising certain felons from the state to the individual counties." (*People v. Cruz, supra*, 207 Cal.App.4th at p. 671.) As a result, eligible felons sentenced on or after October 1, 2011, for specified offenses now serve their sentences in county jail instead of state prison if probation is denied. (§ 1170, subd. (h)(1), (2), (4) & (6).) A defendant is not eligible to serve his or her sentence in county jail, even if he or she is convicted of an offense that specifies its commission is to be punished pursuant to section 1170, subdivision (h), if he or she (1) has a current or prior conviction for a violent felony described in subdivision (c) of section 667.5 or a serious felony described in subdivision (c) of section 1192.7; (2) has a prior conviction in another jurisdiction for an offense with all the elements of a violent or serious felony described in those sections; (3) is required to register as a sex offender pursuant to section 290 et seq.; or (4) an enhancement pursuant to section 186.11 is imposed as part of his or her sentence. (§ 1170, subd. (h)(3).)

Insofar as the record before us shows, defendant was not disqualified from being sentenced pursuant to section 1170, subdivision (h), by virtue of any of the foregoing factors. The current offenses for which she was convicted in Fresno County—receiving a stolen motor vehicle and possessing methamphetamine—now require sentencing pursuant to that statute. (§ 496d, subd. (a), as amended by Stats. 2011, ch. 15, § 374, eff. Apr. 4, 2011, operative Oct. 1, 2011; Health & Saf. Code, § 11377, subd. (a), as amended by Stats. 2011, ch. 15, § 171, eff. Apr. 4, 2011, operative Oct. 1, 2011.) Had defendant been sentenced in her Tulare County case on or after October 1, 2011, her offenses there—commercial burglary and forgery—would also have required that she be sentenced pursuant to section 1170, subdivision (h). (§§ 461, subd. (b), as amended by Stats. 2011, ch. 15, § 355, eff. Apr. 4, 2011, operative Oct. 1, 2011, 473, as amended by Stats. 2011, ch. 15, § 360, eff. Apr. 4, 2011, operative Oct. 1, 2011.)

Both parties assert defendant should have been sentenced, in her Fresno County cases, pursuant to section 1170, subdivision (h). The parties appear to envision defendant would complete her Tulare County sentence in state

prison, then return to Fresno County and finish the balance of her Fresno County sentence in county jail. (See *People v. Bruner* (1995) 9 Cal.4th 1178, 1182, fn. 3 [40 Cal.Rptr.2d 534, 892 P.2d 1277] [concurrent new term overlaps prior term to extent service of earlier sentence is not complete on day new term imposed].)[5] They reason that, under section 1170.1, subdivision (a), consecutive sentences merge into a single, aggregate term; however, this is not the case where, as here, sentences are ordered to run concurrently. (*In re Reeves* (2005) 35 Cal.4th 765, 772–773 [28 Cal.Rptr.3d 4, 110 P.3d 1218].)[6] Because of the lack of merger, defendant says, when concurrent terms are imposed, each is governed by its respective statute. Accordingly, the court was required to sentence defendant's Fresno County cases under the statute in effect on the date of the sentencing hearing, to wit, section 1170, subdivision (h). The Attorney General reaches the same result, arguing that, although section 1170.1, subdivision (a) permits a county jail sentence to be served in state prison when the sentences are ordered to run consecutively, no section allows a concurrent county jail sentence to be served in state prison, and defendant's Fresno County sentence is not part of the aggregate term of imprisonment.

---

[5] Although not mentioned by either party, defendant would also be subject to postrelease community supervision (PRCS) with respect to her Tulare County case (§ 3451, subd. (a)), but under no postrelease supervision of any type with respect to her Fresno County cases unless a hybrid sentence was imposed in those cases pursuant to section 1170, subdivision (h)(5). Depending on the amount of time left on the sentence in the Tulare County case, how the Fresno County sentence was structured, and her accrual of conduct credits, defendant conceivably could serve most or all of her PRCS period while in jail. (See § 3456, subd. (a)(2), (3).)

[6] Section 1170.1, subdivision (a), provides: "Except as otherwise provided by law, . . . when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses. Whenever a court imposes a term of imprisonment in the state prison, whether the term is a principal or subordinate term, the aggregate term shall be served in the state prison, regardless as to whether or not one of the terms specifies imprisonment in the county jail pursuant to subdivision (h) of Section 1170."

Because the trial court imposing sentence in the Fresno County cases did not pronounce a single, aggregate term as defined in section 1170.1, subdivision (a), it was not in a position to, in effect, resentence defendant in the Tulare County case by treating all the cases as if they were all counts in the current case. (Cal. Rules of Court, rule 4.452; see *In re Reeves, supra*, 35 Cal.4th at pp. 772–773.) As a result, the trial court could not resentence defendant, in her Tulare County case, pursuant to section 1170, subdivision (h).

To hold as the parties suggest would result in wasted state and county resources occasioned by prisoners being needlessly transferred between facilities and, more importantly, jurisdictions; place additional, unwarranted burdens on county probation departments; and have a significant potential for confusion and conflict. For instance, suppose, in defendant's case, she were given a hybrid sentence, pursuant to section 1170, subdivision (h)(5), in her Fresno County matter. The terms, conditions, and procedures applicable to her period of mandatory supervision would be those "generally applicable to persons placed on probation." (§ 1170, subd. (h)(5)(B)(i).) At the same time, however, defendant would likely also be subject to PRCS following completion of her Tulare County sentence (see § 3451), with many of the conditions of PRCS being set by statute (see § 3453). These conditions, and the procedures to be undertaken in the event of a violation, might or might not be the same as those applicable to defendant's mandatory supervision. The supervising county probation department would be charged with overseeing and harmonizing both sets of conditions and procedures—in essence, creating some form of hybrid supervision—rather than merely supervising defendant either as a person akin to a probationer *or* as a person akin to a parolee. We will not assume the Legislature intended such an illogical and unnecessary use of scarce resources. (See, e.g., *People v. Valladoli* (1996) 13 Cal.4th 590, 604 [54 Cal.Rptr.2d 695, 918 P.2d 999] [we must interpret legislative enactments so as to avoid absurd results]; *Barragan v. Superior Court* (2007) 148 Cal.App.4th 1478, 1484 [56 Cal.Rptr.3d 660] ["Courts do not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature."].)

Moreover, even absent a hybrid sentence, the result under the circumstances present here would be clearly contrary to the Legislature's intent. As we previously noted (see fn. 5, *ante*), if the balance of defendant's concurrent sentences were to be served in the county jail after she completed her state prison time, defendant's opportunity on postprison community supervision time would be shortened or eliminated by the fact she would be spending that time incarcerated. Such a result would contradict the intent of the Postrelease Community Supervision Act of 2011 (§ 3450 et seq.)—which is to use postrelease time of up to three years to, instead, provide services designed to improve public safety outcomes through facilitated successful reintegration back into society (see, e.g., *id.*, subd. (b)(5)).

Our conclusion that defendant was properly sentenced to state prison is confirmed by the fact there now exists express statutory authority for a concurrent county jail sentence to be served in state prison. At the time defendant was sentenced for her Fresno County offenses, former section 669 provided, in pertinent part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different

judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively." Effective June 27, 2012, Senate Bill No. 1023 (2011–2012 Reg. Sess.) divided section 669 into subdivisions (a) through (d). The foregoing became part of subdivision (a). The following language was added as subdivision (d): "When a court imposes a concurrent term of imprisonment and imprisonment for one of the crimes is required to be served in the state prison, the term for all crimes shall be served in the state prison, even if the term for any other offense specifies imprisonment in a county jail pursuant to subdivision (h) of Section 1170." (§ 669, as amended by Stats. 2012, ch. 43, § 23, eff. June 27, 2012.)[7]

Subdivision (d) of section 669 is ambiguous in that it can be read as applying, inter alia, only when a single court imposes concurrent sentences in a single proceeding (for example, when the trial court here imposed concurrent terms in defendant's Fresno County cases), or when concurrent terms are imposed in different proceedings (for example, when the trial court here ordered defendant's Fresno County term to run concurrent to her Tulare County sentence). Since its amendment in 1935, however, section 669 has explicitly included sentences imposed by different judges in different proceedings. (See Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 669, p. 452.) The placement of subdivision (d) in section 669 is a strong indication the Legislature intended the provisions of that subdivision to apply regardless of whether the concurrent terms were imposed in the same or different proceedings or courts. In addition, the language of subdivision (d) of section 669 tracks the language of the portion of section 1170.1, subdivision (a) that mandates, where consecutive sentences are imposed and at least one is to be served in state prison, service of the aggregate term in state prison even if one of the terms specifies imprisonment in the county jail pursuant to section 1170, subdivision (h). Subdivision (a) of section 1170.1 specifies that it applies when a person is convicted of two or more felonies, whether in the same or different proceedings or courts.

In our view, it would be illogical to treat concurrent sentences differently from consecutive sentences in terms of specifying where those sentences are to be served when the term for at least one offense must be served in state prison while the term for another offense must be served in a county jail due to realignment. It would also be illogical to treat concurrent sentences differently from each other based solely on whether they are imposed in the

---

[7] We directed the parties to submit supplemental briefs addressing the effect of section 669, subdivision (d) on defendant's claim, and the Attorney General's concession that defendant should have been sentenced to county jail under section 1170, subdivision (h). The Attorney General's supplemental brief contained no substantive analysis or discussion.

same proceeding or court or by the same judge, or in different proceedings or courts or by different judges.

■ " 'When construing a statute, we must "ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citation.] '[W]e begin with the words of a statute and give these words their ordinary meaning.' [Citation.] 'If the statutory language is clear and unambiguous, then we need go no further.' [Citation.] If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.] Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 211–212 [120 Cal.Rptr.2d 783, 47 P.3d 629]; accord, *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 741 [25 Cal.Rptr.3d 879].) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; accord, *People v. Mohammed* (2008) 162 Cal.App.4th 920, 927–928 [76 Cal.Rptr.3d 372].)

We conclude section 669, subdivision (d) applies where, as here, the concurrent terms at issue were imposed in different courts and proceedings. Express language at page 1 of the Senate Budget and Fiscal Review Committee, third reading analysis of Senate Bill No. 1023 (2011–2012 Reg. Sess.) as amended June 25, 2012, demonstrates the Legislature's intent, in amending section 669, was to *clarify* a point left unclear by the original realignment legislation.[8] Thus, regardless of whether section 669,

---

[8] The "SUMMARY" of the analysis states, in pertinent part: "Makes necessary statutory and technical changes to implement the Budget Act of 2012 related to 2011 Public Safety Realignment. Specifically, this bill: [¶] . . . [¶] 7) Clarifies that when a court imposes a concurrent term of imprisonment for multiple crimes and any of the crimes is punishable by a state prison term, the entire term shall be served in state prison." (Sen. Budget and Fiscal

subdivision (d) could be retroactively applied to defendant's case—a question we need not, and do not, decide—it is unmistakable that the Legislature's intent with respect to cases such as defendant's has always been that the entire sentence is to be served in state prison.[9] Insofar as the trial court's comments indicate it may have mistakenly believed that where defendant serves her sentence is up to CDCR (see *People v. Clytus* (2012) 209 Cal.App.4th 1001, 1007 [147 Cal.Rptr.3d 448]), any error was manifestly harmless.

Defendant notes that she admitted a prior prison term enhancement (§ 667.5, subd. (b)) in Fresno County Superior Court case No. F10900198, and that, although it is apparent from the sentence imposed that the enhancement was stricken pursuant to section 1385, subdivision (a) as part of the plea bargain, no mention of the enhancement was made at the sentencing hearing. We will direct the trial court to cause the sentencing minutes to be amended to specify that the court struck the enhancement and the reasons therefor. (See § 1385, subds. (a) & (c)(1); *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1561 [85 Cal.Rptr.3d 155].)[10]

## DISPOSITION

The judgment is affirmed. The trial court is directed to cause the sentencing minutes of November 18, 2011, in Fresno County Superior Court case No. F10900198, to be amended to reflect that the Penal Code section 667.5, subdivision (b) enhancement was stricken pursuant to Penal Code section

Review Com., 3d reading analysis of Sen. Bill No. 1023 (2011–2012 Reg. Sess.) as amended June 25, 2012, p. 1 <http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1001-1050/sb_1023_cfa_20120625_164617_asm_floor.html> [as of Feb. 15, 2013].)

[9] Although we do not address the retroactivity/ex post facto issue, we note that whether a statute violates ex post facto principles through the infliction of greater punishment depends on the punishment annexed to the crime at the time it was committed. (See, e.g., *Weaver v. Graham* (1981) 450 U.S. 24, 30–31 [67 L.Ed.2d 17, 101 S.Ct. 960], overruled on another ground as stated in *California Dept. of Corrections v. Morales* (1995) 514 U.S. 499, 506, fn. 3 [131 L.Ed.2d 588, 115 S.Ct. 1597]; *People v. Ansell* (2001) 25 Cal.4th 868, 884 & fn. 22 [108 Cal.Rptr.2d 145, 24 P.3d 1174]; *People v. Sobiek* (1973) 30 Cal.App.3d 458, 472 [106 Cal.Rptr. 519].) At the time they were committed, all defendant's Fresno County offenses permitted imposition of a prison sentence. Thus, application of section 669, subdivision (d) would not result in the imposition of any greater punishment than that to which defendant was subject at the time of her offenses. Also, as we have seen, the addition of subdivision (d) to section 669 was a clarification of the law existing under realignment, not an expansion of punishment. (See *People v. Garcia* (1989) 211 Cal.App.3d 1096, 1102–1103 [260 Cal.Rptr. 71]; *People v. Schock* (1984) 152 Cal.App.3d 379, 390 [199 Cal.Rptr. 327]; but see *People v. Cuevas* (1980) 111 Cal.App.3d 189, 199–200 [168 Cal.Rptr. 519].)

[10] Since the abstract of judgment form expressly advises that stricken enhancements are not to be listed thereon, we see no reason to require preparation of an amended abstract of judgment.

1385, subdivision (a), and the reasons for that action, and to forward a certified copy of same to the appropriate authorities.

Wiseman, Acting P. J., and Cornell, J., concurred.