Filed 3/22/13  P. v. Mason CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br> v.<br><br> LLOYD HARVEY MASON,<br><br>  Defendant and Appellant. | F063753<br><br> (Super. Ct. No. RF006037)<br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Tia M. Coronado, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Lloyd Harvey Mason pleaded no contest to charges of possessing methamphetamine for sale, possessing concentrated cannabis, and being a felon in possession of a firearm.  He asks us to review sealed materials related to his motions to

quash and traverse a search warrant in order to determine whether the trial court erred when it refused to disclose the identity of a confidential informant on whom the police relied. We have reviewed all the materials in the record and find no grounds for disturbing the trial court's rulings.

Mason also challenges the trial court's order that he serve his entire sentence in state prison, even though the sentence included a longer term for a county jail offense and a shorter concurrent term for a state prison offense. We construe the 2011 Realignment Legislation[1] as mandating state prison for the entire sentence in this situation, consistent with our recent decision in *People v. Torres* (2013) 213 Cal.App.4th 1151 (*Torres*). We affirm the judgment.

### *FACTUAL AND PROCEDURAL HISTORIES*

A confidential informant told police that Mason was selling methamphetamine from his house. Police conducted a sting operation in which Mason sold methamphetamine to the informant. Using an affidavit describing the sting operation, police obtained a warrant to search Mason's house. Inside, they found methamphetamine, marijuana, hashish, glass pipes, syringes, a scale, pay-owe records, clear plastic bags, a shotgun, shotgun shells, a handgun, three throwing knives, three throwing stars (shuriken), and an expandable baton. Mason admitted to officers that he owned all these items and said he had been selling drugs for 30 years.

The district attorney filed an information charging eight counts: (1) possession of methamphetamine for sale (Health & Saf. Code, § 11378); (2) possession of concentrated cannabis for sale (Health & Saf. Code, § 11359); (3) possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)); (4 & 5) being a felon in possession of a firearm (former Pen. Code, § 12021, subd. (a)(1));[2] (6) being a felon in possession of ammunition

---

[1] This is the act's official name. (Stats. 2011, ch. 15, § 1; Stats. 2011, 1st Ex. Sess. 2011, ch. 12, § 1.)

[2] This offense has been recodified as Penal Code section 29800, subdivision (a)(1).

(former Pen. Code, § 12316, subd. (b)(1));[3] (7 & 8) unlawful possession of a weapon (former Pen. Code, § 12020, subd. (a)(1)).[4] For count 1, the information alleged that Mason had three prior drug convictions qualifying for a sentence enhancement under Health and Safety Code section 11370.2, subdivision (c).

Pursuant to a plea agreement, Mason pleaded no contest to counts 1, 3 and 5, and admitted one of the prior drug convictions, in exchange for a stipulated six-year sentence and the dismissal of the remaining charges.

The court imposed the upper term of three years for count 1 plus three years for the prior drug conviction. For counts 3 and 5, the court imposed three-year upper terms, concurrent with the sentence for count 1.

Under the 2011 Realignment Legislation, count 1, possession of methamphetamine for sale, and count 3, possession of concentrated cannabis, are punishable by incarceration in county jail, not state prison. (Health & Saf. Code, §§ 11378, 11357, subd. (a); Pen. Code, § 1170, subd. (h).) Count 5, being a felon in possession of a firearm, is punishable by incarceration in state prison. (Former Pen. Code, § 12021, subd. (a)(1); Pen. Code, §§ 18, subd. (a); 29800, subd. (a)(1).) The probation officer submitted a letter to the court expressing the opinion that Mason should serve three years in state prison for the concurrent term imposed for count 5, and then serve the remainder of his six-year sentence in county jail. The trial court observed that the probation officer "did a very good analysis," but then sentenced Mason to state prison on all three counts, remarking that the proper disposition would ultimately need to be determined on appeal.

---

[3]This offense has been recodified as Penal Code section 30305, subdivision (a)(1).

[4]The provisions of this section have been distributed among several new sections. Mason was charged specifically with possession of a shuriken (new Pen. Code, § 22410) and a billy (new Pen. Code, § 22210).

## DISCUSSION

### I. Search warrant

The police obtained the search warrant using an affidavit that included an account of a confidential informant's tip that Mason was selling methamphetamine and the confidential informant's participation in the sting operation. Mason filed a motion to unseal the affidavit, discover the identity of the confidential informant, and traverse and quash the warrant.

A motion to quash "asserts the warrant on its face lacks probable cause." The defendant must show that the affidavit lacks sufficient evidence as a matter of law to establish probable cause. (*People v. Heslington* (2011) 195 Cal.App.4th 947, 957, fn. 7.) A motion to traverse "'mount[s] a subfacial challenge, i.e., attack[s] the underlying veracity of statements made on the face of the search warrant application.'" The defendant must show that the affidavit contains a false statement made knowingly or recklessly and without which the warrant lacks probable cause. (*Ibid.*)

By statute, the identity of a confidential informant is privileged (Evid. Code, § 1041), and disclosure of an informant's identity is not necessary to establish the legality of a search warrant that is valid on its face (Evid. Code, § 1042, subd. (b)). A court may require disclosure in spite of the privilege when disclosure is "'relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause ….'" (*People v. Hobbs* (1994) 7 Cal.4th 948, 959 [quoting *Rovario v. United States* (1957) 353 U.S. 53, 60-61].)

Pursuant to Evidence Code section 915, subdivision (b), and *People v. Hobbs, supra,* 7 Cal.4th at pages 957-961 and 971-975, the court conducted an in camera hearing. The court then unsealed a portion of the affidavit describing the informant's tip and the sting operation in which Mason sold methamphetamine to the informant. The court refused, however, to order discovery of the identity of the informant. It denied the motions to traverse and quash.

4.

Mason now asks us to "review all sealed materials in the record to determine whether the trial court erred in not unsealing all of the affidavit, in denying the motion for additional discovery including the identity of the informant, and/or in denying the motion to traverse the search warrant." In support of this request, Mason filed an application to augment the appellate record to include any sealed reporter's transcript from the in camera hearing. We issued an order requiring the superior court to supply any such transcript. Transcripts for two hearing dates were prepared and received, but no in camera discussion is included in these.

The clerk of the superior court submitted a declaration stating that a hearing on a third date was not transcribed. The appellate record contains the part of the affidavit the court unsealed, but contains no information about the identity of the confidential informant or any other part of the affidavit that might have remained sealed. It does not appear, therefore, that we have been given access to any materials Mason has not already seen. Mason did not, however, make any additional applications to augment, so we assume he considers the record complete for purposes of this appeal.

Having reviewed the record, we find nothing that would undermine any of the trial court's rulings. The identity of the confidential informant was of little significance. The warrant application depended not just on the informant's tip, but on the results of the sting operation. After the police conducted that operation and Mason sold methamphetamine to the informant, the issue of the informant's reliability became unimportant. The sale by itself supported the warrant. Under these circumstances, we can see no plausible way in which learning the informant's identity could have helped Mason to attack the warrant. Mason suggests no way in which he could have used the information. He does not claim, for example, that the police might have fabricated the account of a sting operation and that the informant, if identified, might have testified to that effect at the suppression hearing.

Mason concedes that potential support for his attack on the warrant is the only matter at issue. He cannot argue that the identity of the informant might have helped undermine the case for his guilt because he pleaded no contest. (*People v. Duval* (1990) 221 Cal.App.3d 1105, 1114 ["[W]hen a defendant, by pleading nolo contendere to a charge, has admitted the truth of the allegations, the informant's evidence on the question of guilt no longer has significance and no review on appeal is required"].)

There is no reason, therefore, to disturb the court's decision to keep the informant's identity secret. Further, the description of the sting operation in the affidavit provided probable cause, so the motion to quash was properly denied. There is nothing in the record to cast doubt on the veracity of any statements in the affidavit on which probable cause depended—that is, on the statements describing the sting operation—so the motion to traverse also was properly denied.

## II.    *Effect of Realignment Legislation on concurrent terms*

The 2011 Realignment Legislation altered the housing arrangements for persons convicted of certain felonies. Numerous offenses previously punishable by 16 months, two years, or three years in state prison now are punishable by those terms in county jail. (Stats. 2011, ch. 15, §§ 2-633; Legis. Counsel's Dig., Assem. Bill No. 109 (2011-2012 Reg. Sess.), Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, §§ 4-11; Legis. Counsel's Dig., Assem. Bill No. 17 (2011-2012 1st Ex. Sess.); see Pen. Code, § 1170, subd. (h).) The legislation provides that the new sentencing provisions are to be applied to persons sentenced on or after October 1, 2011. (Pen. Code, § 1170, subd. (h)(6); Stats. 2011, 1st Ex. Sess. 2011, ch. 12, § 12.)

The Legislature considered the question of which institution a prisoner would serve his sentence in if ordered to serve two terms *consecutively*, when one offense is punishable by incarceration in state prison and the other by incarceration in county jail. Should the prisoner be moved between institutions when one portion of the sentence ends

and the next begins?  The Legislature opted to require a prisoner in this situation to serve his entire sentence in state prison:

> "[W]hen any person is convicted of two or more felonies, … and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements ….  Whenever a court imposes a term of imprisonment in the state prison, whether the term is a principal or subordinate term, the aggregate term shall be served in the state prison, regardless as to whether or not one of the terms specifies imprisonment in the county jail pursuant to subdivision (h) of Section 1170."  (Pen. Code, § 1170.1, subd. (a); Stats. 2011, ch. 39, § 29.)

The legislation did not say anything about where a prisoner should serve his time if the court imposed *concurrent* sentences for a state prison offense and a county jail offense.  Presumably, if the sentences are of the same length or the state prison sentence is longer, then the prisoner must serve the time in state prison, since that is where he would have served it if no county jail term had been imposed.  What happens, however, if (as here) the county jail term is longer?  Where does the prisoner serve the portion of the sentence remaining after the state prison term is completed?  Must the prisoner remain in state prison, as he would if the terms were consecutive, or should he be moved to county jail?

The Legislature subsequently became aware of this problem and adopted the solution it had applied to consecutive sentences:  The prisoner is to serve the whole term in state prison.  The Legislature amended Penal Code section 669, adding the following language:

> "When a court imposes a concurrent term of imprisonment and imprisonment for one of the crimes is required to be served in the state prison, the term for all crimes shall be served in the state prison, even if the term for any other offense specifies imprisonment in a county jail pursuant to subdivision (h) of Section 1170."  (Pen. Code, § 669, subd. (d).)

This provision went into effect immediately when the statute was filed with the Secretary of State on June 27, 2012.  (Stats. 2012, ch. 43, §§ 23, 117.)

Mason was sentenced on October 28, 2011, after the 2011 Realignment Legislation became operative but before amended Penal Code section 669 went into effect. The question this case presents is whether, in light of the purposes and provisions of the 2011 Realignment Legislation as a whole, Mason should be ordered to serve all the concurrent terms in state prison even though the Legislature had not yet expressly adopted that rule when he was sentenced.

In interpreting a statute, our objective is "to ascertain and effectuate legislative intent." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007.) We look to the entire statutory scheme in interpreting particular provisions "so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814.) "In the end, we '"must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]'" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003.)

In our view, it would be illogical to treat concurrent sentences differently than consecutive sentences in the present situation. There is little likelihood that the Legislature ever intended to pursue separate policy objectives for concurrent and consecutive sentences as part of the 2011 Realignment Legislation. It ultimately concluded, of course, that they should be treated the same way. To reverse the trial court in this case, we would have to be persuaded that, during the eight months between the operative date of the original legislation and the effective date of the amendment to Penal Code section 669, the Legislature first believed there was some reason to treat concurrent sentences differently and then changed its mind. There is no reason to believe that. It is far more probable that the Legislature simply overlooked the issue at first, and then, when the problem was called to its attention, implemented the solution it would have employed at the outset but for the oversight. In order to avoid an absurd consequence and effectuate

8.

the Legislature's intent, therefore, we conclude that the original legislation inadvertently left a gap on the subject of concurrent sentences, a gap we fill by deeming the original legislation's rule on consecutive sentences to extend to concurrent sentences as well. This conclusion also avoids the anomalous result of creating a small class of prisoners— those sentenced on and after October 1, 2011, and before June 27, 2012, who received a state prison sentence and a longer, concurrent county jail sentence—who must be treated differently than all others.

In so holding, we need not and do not decide whether amended Penal Code section 669 applies retroactively. Our holding is based on the conclusions that the Legislature intended at the time of the original legislation to require consecutive and concurrent terms to be treated in the same way, and that treating them the same way avoids an interpretation of the original legislation that leads to absurd consequences.

There is no due process or other constitutional difficulty involved in our holding that the sentences must all be served in state prison even though the statute did not expressly so require at the time of sentencing. At the time of their *commission*, all the offenses were punishable by imprisonment in state prison, so Mason cannot claim to have been without notice of that potential punishment before he acted.

We reached the same conclusions on this issue in *Torres, supra*, 213 Cal.App.4th 1151, which was filed after briefing was completed in this case. We intend all of our discussion in this opinion to be consistent with our opinion in *Torres*.[5]

Mason argues separately that no state prison sentence should have been imposed for count 5 in the first place because that sentence involved an equal-protection violation. His argument is based on a belief that, after his conviction and sentencing, the offense of being a felon in possession of a firearm became a county jail offense. Mason says he and

---

[5]Even though *Torres* had not yet been decided at the time, we issued a briefing letter on January 31, 2013, to give the parties an opportunity to submit arguments on the issues we have addressed.

those convicted of the offense later are similarly situated and there is no justification that passes constitutional muster for placing him in state prison while later offenders go to county jail.

As the People correctly point out, however, the offense never did, in fact, become a county jail offense. When Mason was sentenced on October 28, 2011, former Penal Code section 12021, subdivision (a)(1), provided that the offense of being a felon in possession of a firearm was a felony. Since that statute did not provide that the offense was punishable in accordance with section 1170, subdivision (h) (i.e., the provision of the Realignment Legislation that mandates incarceration in county jail for certain felonies), it was punishable by 16 months, two years, or three years in state prison under Penal Code section 18. Former Penal Code section 12021, subdivision (a)(1), was repealed and reenacted without substantive change with an operative date of January 1, 2012, as Penal Code section 29800, subdivision (a)(1). (Stats. 2010, ch. 711, §§ 4, 6, 10.) Being a felon in possession of a firearm was and is a state prison offense under realignment.

In claiming that there was a time when being a felon in possession of a firearm was a county jail offense, Mason relies on a version of Penal Code section 18 that was enacted as part of the original 2011 Realignment Legislation. That version read:

"Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a felony is punishable by imprisonment for 16 months, or two or three years as provided in subdivision (h) of Section 1170." (Stats. 2011, ch. 15, § 230.)

Since Penal Code section 1170, subdivision (h), provides for incarceration in county jail, and former Penal Code section 12021, subdivision (a)(1) and Penal Code section 29800, subdivision (a)(1), declare the offense a felony without specifying a punishment, the offense would have been a county jail offense if this version of Penal Code section 18 had ever become operative.

Along with the rest of the original Realignment Legislation, this version of Penal Code section 18 was at first intended to become operative on July 1, 2011. (Stats. 2011,

10.

ch. 15, § 636.)  In legislation filed on June 30, 2011, however, the Legislature changed the operative date to October 1, 2011.  (Stats. 2011, ch. 39, § 68.)  Then, on September 21, 2011, the Legislature enacted a different version of Penal Code section 18, which provides:

> "(a)  Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a felony is punishable by imprisonment for 16 months, or two or three years in the state prison unless the offense is punishable pursuant to subdivision (h) of Section 1170." (Stats. 2011, 1st Ex. Sess. 2011, ch. 12, § 7.)

It is this version that became operative on October 1, 2011, not the previous version.  (Stats. 2011, 1st Ex. Sess. 2011, ch. 12, § 46.)  Since being a felon in possession of a firearm is not declared to be punishable pursuant to Penal Code section 1170, subdivision (h), it is punishable by imprisonment in the state prison under Penal Code section 18, as we have said.

As there was no period during which any defendant could have been sentenced to county jail for being a felon in possession of a firearm, there is no arbitrary classification upon which an equal-protection claim could be based.

## *DISPOSITION*

The judgment is affirmed.

_____
Wiseman, Acting P.J.

WE CONCUR:


_____
Detjen, J.


_____
Peña, J.

11.