Filed 10/29/13

**<u>CERTIFIED FOR PUBLICATION</u>**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>KIRK ALLEN MONTROSE,<br><br>     Defendant and Appellant. | F064261<br><br>(Super. Ct. Nos. CRM009080,<br>CRM010998 & CRM015638)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  John D. Kirihara, Judge.

Carol Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Ryan B. McCarroll, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following the termination of his probation, defendant Kirk Allen Montrose was sentenced to state prison. On appeal, he claims he instead should have been committed to county jail pursuant to Penal Code section 1170, subdivision (h). We disagree. That statute does not apply to persons whose sentences, imposed but suspended prior to October 1, 2011, were executed after that date. We affirm.

## PROCEDURAL HISTORY[1]

On April 14, 2010, a complaint was filed in Merced County Superior Court case No. CRM009080 (case No. 9080), charging defendant with possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)), and alleging he had suffered a prior conviction under the "Three Strikes" law (Pen. Code,[2] § 1170.12, subd. (c)(1)) and had served five prior prison terms (§ 667.5, subd. (b)). On April 29, 2010, defendant pled no contest to the possession charge in exchange for dismissal of the special allegations.

On July 2, 2010, a complaint was filed in Merced County Superior Court case No. CRM010998 (case No. 10998), charging defendant with carrying a concealed dirk or dagger (former § 12020, subd. (a)(4), now § 21310; count 1) and possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 2), and alleging he had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and had served six prior prison terms (§ 667.5, subd. (b)). On July 19, 2010, defendant pled no contest to count 2 in exchange for dismissal of count 1 and all special allegations. That same day, he was sentenced to prison for the upper term of three years in case No. 10998, plus eight months (one-third of the middle term) in case No. 9080. Execution of sentence was suspended in both cases, and defendant was placed on probation on various terms and conditions.

---

[1]    As the facts underlying defendant's offenses are not pertinent to the issue raised on appeal, we omit a summary thereof.

[2]    Further statutory references are to the Penal Code unless otherwise stated.

2.

On January 31, 2011, a complaint was filed in Merced County Superior Court case No. CRM015638 (case No. 15638), charging defendant with possessing a concealed dirk or dagger (former § 12020, subd. (a)(4), now § 21310), and alleging he had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and had served five prior prison terms (§ 667.5, subd. (b)). On March 2, 2011, defendant pled no contest to the possession charge, and admitted violating his probation in case Nos. 9080 and 10998, in exchange for dismissal of the remaining allegations. On March 16, 2011, defendant was sentenced in case No. 15638 to eight months in prison, to be served consecutively to the sentences in case Nos. 9080 and 10998. However, the court suspended execution of sentence for three years and placed defendant on probation for that period, on terms and conditions that included completion of a previously ordered one-year residential drug treatment program. Defendant was ordered reinstated on probation, on the terms and conditions previously ordered, in case Nos. 9080 and 10998.

On June 15, 2011, affidavits of probation violation were filed in all three cases, based on defendant's June 13, 2011, admission of methamphetamine use. On July 5, 2011, the court revoked defendant's probation in all three cases.

On August 26, 2011, defendant admitted violating the conditions of his probation. Probation was reinstated in all three cases on the previously existing terms and conditions, except that defendant was now ordered to enroll in and successfully complete the Hobie House program, which consisted of six months of residential treatment and six months of aftercare. On September 20, 2011, the court was informed Hobie House would not accept defendant. On October 13, 2011, defendant was given the option of withdrawing his admissions, but he declined because he wanted to be placed in a program. No program was available to him, however. On October 21, 2011, the court noted that it was prepared to impose the suspended prison time, but it continued the matter so the parties could attempt to find a viable alternative. On November 18, 2011, the court again offered defendant the opportunity to withdraw his probation violation

3.

admissions. When defendant declined and asked that the original agreement be enforced, the court continued the matter one final time to allow the defense to find a suitable program.

On December 9, 2011, the trial court terminated defendant's probation and ordered execution of the previously imposed consecutive prison sentences of three years in case No. 10998, and eight months each in case Nos. 9080 and 15638. Defendant's total term was thus four years four months in state prison.

## **DISCUSSION**

On October 1, 2011, the "2011 Realignment Legislation addressing public safety" (Stats. 2011, ch. 15, § 1) became operative.[3] Realignment "shifted responsibility for housing and supervising certain felons from the state to the individual counties." (*People v. Cruz* (2012) 207 Cal.App.4th 664, 671.) Felons eligible to be sentenced under realignment now serve their terms of imprisonment in local custody rather than state prison. (*Ibid.*; § 1170, subd. (h).)

Defendant says his offenses of conviction are qualifying felonies under realignment. The Attorney General does not dispute this, or contend defendant is disqualified pursuant to subdivision (h)(3) of section 1170.[4] Accordingly, defendant

---

[3] For brevity, we refer to this legislation as realignment.

[4] At all times since October 1, 2011, Health and Safety Code section 11377, subdivision (a) has provided for punishment "by imprisonment in a county jail for a period of not more than one year or pursuant to subdivision (h) of Section 1170 of the Penal Code." Section 21310 was amended effective June 27, 2012, to provide for sentencing pursuant to section 1170, subdivision (h). (Stats. 2012, ch. 43, § 94.) We will assume, for the purpose of our discussion, that defendant's offenses constituted qualifying felonies under section 1170, subdivision (h)(1) and (2) at all times pertinent to this appeal. We note that, if defendant's weapon conviction did *not* so qualify, defendant was properly sentenced to state prison in all three cases. (§ 1170.1, subd. (a); see *People v. Torres* (2013) 213 Cal.App.4th 1151, 1159.)

Section 1170, subdivision (h)(3) excludes from sentencing under realignment any defendant who has a prior or current conviction for a serious or violent felony, whether

4.

concludes, he is entitled to have his commitment to state prison vacated, and to be committed to serve his term in county jail.

We do not agree. Under the plain language of section 1170, subdivision (h)(6), the sentencing changes of realignment apply only to persons "sentenced on or after October 1, 2011." In case Nos. 9080 and 10998, defendant was *sentenced* on July 19, 2010, when he was given terms of eight months and three years, respectively, in state prison. In case No. 15638, defendant was *sentenced* on March 16, 2011, when he was given a term of eight months in state prison. Thus, defendant was sentenced prior to October 1, 2011, in all three cases, and so is not entitled to a county jail commitment pursuant to section 1170, subdivision (h). That his sentences were not ordered *executed* until after October 1, 2011, does not change this result.

Our conclusion is supported by *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*), in which the California Supreme Court addressed a trial court's authority to alter a sentence upon revocation of probation. The high court concluded: "[I]f the trial court has suspended *imposition* of sentence, it ultimately may select any available sentencing option. However, if … the court actually imposes sentence but suspends its *execution*, and the defendant does not challenge the sentence on appeal, but instead commences a probation period reflecting acceptance of that sentence, then the court lacks the power … to reduce the imposed sentence once it revokes probation." (*Id*. at p. 1084.)

*Howard* noted "the important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences." (*Howard*, *supra*, 16 Cal.4th at p. 1087.) Relying heavily on

sustained in California or another jurisdiction; who is required to register as a sex offender; or whose sentence is enhanced pursuant to section 186.11. Although the charging documents in all three cases alleged defendant had suffered a prior conviction for a serious or violent felony, those allegations were dismissed and never admitted by defendant.

section 1203.2, subdivision (c) and what is now rule 4.435(b) of the California Rules of Court, the court explained: "When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation. [Citations.] The probation order is considered to be a final judgment only for the 'limited purpose of taking an appeal therefrom.' [Citation.] On the defendant's rearrest and revocation of … probation, '… the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced.' [Citations.]" (*Howard*, *supra*, at p. 1087.) In such a situation, "*sentencing itself has been deferred ….*" (*Ibid.*, italics added.) A different situation exists where a sentence has been imposed but its execution suspended, however. (*Ibid.*) In that circumstance, "'[t]he revocation of the suspension of execution of the judgment brings the former judgment into full force and effect ….' [Citations.]" (*Ibid.*) Accordingly, "section 1203.2, subdivision (c), recites that following the defendant's rearrest, and on revocation and termination of probation, 'if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that *the judgment shall be in full force and effect*.' [Citation.]" (*Id.* at pp. 1087-1088.)

We recognize the *Howard* court was addressing the question whether, upon revocation of probation, a trial court has the authority to reduce a probationer's previously imposed but suspended sentence (*Howard*, *supra*, 16 Cal.4th at pp. 1084, 1088), and it obviously could not have considered realignment or a situation where the issue is not the length of the term served so much as it is the place where it is served. Nevertheless, although the Legislature has amended portions of section 1203.2 since *Howard* was decided and since the advent of realignment (see Stats. 2012, ch. 43, § 30, eff. June 27, 2012; Stats. 2013, ch. 31, § 9, eff. June 27, 2013; Stats. 2013, ch. 32, § 7, eff. June 27, 2013), it has not seen fit to change subdivision (c) of the statute. "'[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the

6.

time legislation is enacted and to have enacted and amended statutes "'in the light of such decisions as have a direct bearing upon them.'" [Citations.]' [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 367.)

We find nothing in the language, purpose, or history of the realignment legislation suggesting the Legislature intended that a defendant would be considered "sentenced" at a certain juncture for one purpose, but not for purposes of realignment. Significantly, in section 17.5, subdivision (a)(5), the Legislature found and declared that "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society." A defendant who has been placed on probation and who has then violated the terms and conditions of the probationary grant to such an extent that the court deems it appropriate to execute a previously imposed prison term, which the defendant knew he or she was facing in the event of noncompliance, has already proven him- or herself unamenable to the type of community-based programs and assistance envisioned by realignment.

Defendant points to *People v. Clytus* (2012) 209 Cal.App.4th 1001 (*Clytus*) as support for his position. In that case, the defendant was sentenced to prison in 2010 for offenses that subsequently became punishable pursuant to section 1170, subdivision (h), but execution of sentence was suspended and he was placed on probation. Probation was subsequently revoked and, on October 14, 2011, the defendant admitted violating the terms and conditions thereof. The trial court declined to reinstate probation and executed the previously suspended sentence, ordering the defendant to serve his term in state prison. (*Clytus, supra,* at p. 1004.) Division Eight of the Second District Court of Appeal concluded that "a trial court executing a suspended sentence as punishment for a probation violation on and after October 1, 2011, has no discretion to send to prison a

7.

defendant whose criminal record and current felony convictions qualify for a county jail commitment under section 1170, subdivision (h)." (*Id*. at p. 1006.)

In so holding, the appellate court relied on "basic statutory interpretation and the absence of any language in the Realignment Act to suggest a contrary intent or purpose." (*Clytus*, *supra*, 209 Cal.App.4th at p. 1006.)  It looked to subdivision (h)(6) of section 1170, which provides (as we have noted) that realignment's sentencing changes "shall be applied prospectively to any person sentenced on or after October 1, 2011," and concluded the language's plain meaning is "that any sentence *executed* on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail .…" (*Clytus*, *supra*, at p. 1006, italics added.)  The court acknowledged the defendant was sentenced before October 1, 2011, but reasoned that, because the trial court had to make and articulate the reasons for its discretionary choices not to reinstate probation and to execute the sentence, defendant was also a "'person sentenced'" when the court executed the suspended sentence after October 1, 2011.  (*Id*. at p. 1007.)  The appellate court found *Howard* not controlling, since it could not have anticipated, and did not address, realignment; and declined to assume, absent authority, that the Legislature acquiesced to judicial precedent when enacting a new law, especially when the judicial precedent and the new law addressed different issues.  (*Clytus*, *supra*, at pp. 1008-1009.)

With the exception of the Sixth District, every appellate court to address the subject has disagreed with *Clytus*.  These courts have concluded, instead, that because a defendant is "sentenced" on the date sentence is imposed, a suspended prison term imposed before, but ordered executed after, October 1, 2011, is to be served in state prison and not county jail pursuant to section 1170, subdivision (h).  (*People v. Wilcox* (2013) 217 Cal.App.4th 618, 623-627 [Third Dist. Court of Appeal]; *People v. Kelly* (2013) 215 Cal.App.4th 297, 300-306 [Fourth Dist. Court of Appeal, Div. 2]; *People v. Mora* (2013) 214 Cal.App.4th 1477, 1481-1482 [Fourth Dist. Court of Appeal, Div. 1]; *People v. Gipson* (2013) 213 Cal.App.4th 1523, 1525-1526, 1528-1530 [Second Dist.

Court of Appeal, Div. 2].)  The California Supreme Court has granted review in the Sixth District Court of Appeal opinion that follows *Clytus*.  (*People v. Scott* (2013) 216 Cal.App.4th 848, review granted July 24, 2013, S211670.)[5]

We add our voice to those that have disagreed with *Clytus*.  Defendant having been sentenced to prison in all three cases prior to October 1, 2011, the court correctly executed — without change — the sentence already imposed.  Defendant is not entitled to have his state prison commitment vacated and to be committed instead to serve his term in county jail.

### DISPOSITION

The judgment is affirmed.

_____
                    DETJEN, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
POOCHIGIAN, J.

---

[5]      Recently, separate panels of the Sixth District have taken contradictory positions on the subject.  In *People v. Moreno* (2013) 218 Cal.App.4th 846, 848, 849-851, petition for review pending, petition filed September 17, 2013, the majority disagreed with *Clytus* and held that realignment does not come into play where a defendant is sentenced before October 1, 2011, then probation is revoked and sentence executed after that date.  In *People v. Reece* (2013) 220 Cal.App.4th 204 [2013 Cal.App.Lexis 793, *1, *11-*16], the court again followed *Clytus*.