Filed 8/5/14  P. v. Williams CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B248527 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA084077) |
| v. | |
| TROY DARNELL WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed.

Alex Green, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

Defendant and appellant, Troy Darnell Williams, appeals from the judgment entered following a jury trial which resulted in his conviction of the unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) and the trial court's findings Williams previously had suffered a 1993 Kansas conviction for robbery (see Pen. Code, § 1170, subd. (h)(3)) within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and convictions for a number of felonies, for some of which he served prison terms, in violation of California law (see Pen. Code, §§ 666.5, 667.5, subd. (b)).  After striking Williams's Kansas "strike" conviction and one California enhancement, the trial court sentenced Williams to a total term of six years in state prison.  We conclude the trial court properly determined the Kansas robbery conviction amounted to a serious felony, or strike, under California law and affirm the judgment.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*.

Daniel Zapien worked part time at his family's business, Sports Auto Sales (Sports Auto), a used car dealership on La Brea Avenue in Inglewood.  On April 16,

---

[1]    Although the trial court struck the Kansas conviction, Williams may properly appeal the trial court's finding the robbery amounted to a serious felony within the meaning of the Three Strikes law.  Pursuant to Penal Code section 1170, subdivision (h)(3), when a defendant "has a prior felony conviction in another jurisdiction for an offense that has all the elements of a serious felony described in subdivision (c) of [Penal Code s]ection 1192.7 . . . , an executed sentence for a felony punishable pursuant to this subdivision shall be served in state prison."  Robbery is classified as a serious felony in Penal Code section 1192.7, subdivision (c)(19).  In addition, when a defendant is to serve his or her sentence in state prison "due to a prior or current conviction [or] sentence enhancement,"  that conviction or enhancement "shall not be subject to dismissal pursuant to [Penal Code s]ection 1385."  (Pen. Code, § 1170, subd. (f).)  Accordingly, if the trial court had found the Kansas robbery had not amounted to a serious felony pursuant to the Three Strikes law, Williams could have been sentenced to county jail under the Realignment Act.  (See Pen. Code, § 1170, subd. (h)(2)).  Whether, under that act, Williams could have been sentenced to county jail rather than state prison is a proper subject for appeal.  (See, e.g., *People v. Vega* (2014) 222 Cal.App.4th 1374; *People v. Montrose* (2013) 220 Cal.App.4th 1242; *People v. Moreno* (2013) 218 Cal.App.4th 846.)

2

2012, Zapien was showing customers vehicles. One of those customers was Williams. Williams had been to the dealership the week before, had been interested in purchasing a Jeep Cherokee and had filled out a credit application. The application had included a home address and place of employment. It indicated Williams worked at the Inglewood Fine Street Barber Shop.

During the week prior to April 16, the Jeep Williams had wished to buy had been sold to another customer. In any event, Williams's credit application had been denied. He had been told, however, he could purchase a car if he put more money down. Williams indicated he was interested in a Mercedes and, because he was extremely busy that day, Zapien did not accompany Williams to the car. He simply gave to Williams the keys so he could look at the interior. When Williams returned the keys from the Mercedes, he asked for the keys to a second car. After looking at several cars, Williams asked for the keys to a white Nissan Sentra parked next to a narrow driveway used by the dealership's employees.

The main entrance to Sports Auto is a driveway on La Brea. Customers used the main driveway to enter the business and, when a customer wished to test drive a vehicle, they drove off the lot by way of the driveway on La Brea. A second driveway, which led to a "very narrow space," was where the employees drove into the business. That driveway was usually chained closed and locked. However, for some reason, on April 16 the chain was down on the ground and had not been locked.

When, at approximately 4:30 p.m., Williams asked for the keys to the Nissan Sentra parked next to the employee's driveway, Zapien gave them to him. Although Williams had not asked if he could test drive the vehicle, at approximately 6:00 p.m., Zapien noticed the Sentra was gone. It was no longer parked in the lot. When Zapien then checked the surveillance video, he saw Williams get into the car, back it up, hit a pick-up truck parked behind it, then drive it off the lot through the employee's driveway.

Since Williams had been gone for approximately two hours, Zapien called the police. When officers arrived at the dealership approximately 10 minutes later, Zapien showed them the surveillance video and gave them Williams's credit application.

3

Police officers later found the Sentra in a parking structure in an alley behind the barber shop where Williams worked. After Williams walked into the parking structure and got into the Sentra, police officers attempted to detain him. Williams, however, got out of the car and ran. Officers followed him and were eventually able to take him into custody. Inside the Sentra, officers found Williams's cellular telephone

When police officers later returned the Sentra to the dealership, it no longer had any of the stickers usually placed on the passenger side and in the windshield of the car. In addition, it had a scuff mark and "paint transfer" on the rear bumper where it had hit the truck parked behind it.

2. *Procedural history.*

In a second amended information filed March 6, 2013, Williams was charged with two counts of having prior felony theft convictions involving vehicles (Pen. Code, § 666.5) (counts 1 and 2), one count of unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd. (a)) (count 3) and, as the result of a different incident, one count of grand theft of an automobile (Pen. Code, § 487, subd. (d)(1)) (count 4). It was further alleged Williams had suffered prior convictions in Kansas, one for robbery in 1993 and one for making criminal threats in 1994 (Pen. Code, § 1170, subd. (h)(3)) within the meaning of the Three Strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Finally, it was alleged Williams had suffered convictions in 2007 and 2010 for the unlawful driving or taking of a vehicle within the meaning of Penal Code section 666.5, which provides for a sentence enhancement for prior theft offenses involving vehicles, and a 2011 conviction for petty theft with a prior pursuant to Penal Code section 667.5, subdivision (b), which also provides for a sentence enhancement.[2]

Williams was arraigned as to counts 3 and 4, entered pleas of not guilty, waived his right to counsel and decided to proceed to trial in propria persona. The trial court then

---

[2]    The trial court dismissed the charges alleged in counts 1 and 2, having prior felony theft convictions involving vehicles (Pen. Code, § 666.5), after determining they amounted to enhancements, not substantive offenses.

4

granted his motion to bifurcate the trial with regard to the alleged prior convictions and prison terms.

On March 12, 2013, a jury found Williams guilty of the unlawful driving or taking of a vehicle, a Nissan Sentra, in violation of Vehicle Code section 10851, subdivision (a), a felony as charged in count 3. The jury was unable to reach a verdict with regard to count 4, the grand theft of an automobile, and the trial court declared a mistrial as to that count, then dismissed it in furtherance of justice (Pen. Code, § 1385).

As to the alleged prior convictions and prison terms, the trial court found them true with the exception of the 1994 Kansas conviction for making criminal threats. The court determined "the elements of the [Kansas] criminal threats [statute were] not like the elements for criminal threats in California." However the trial court concluded the 1993 Kansas conviction for robbery qualified as a serious felony, or strike, within the meaning of the Three Strikes law.

At proceedings held on April 19, 2013, Williams made a motion to have the 1993 Kansas conviction for robbery stricken. He asserted, had he known the 1993 conviction could later be used against him as a "strike," he would not have admitted the offense and would have gone to trial. The trial court determined that was not a "viable" argument and denied Williams's motion. Williams then made a motion to have the remaining prior convictions and prison terms stricken pursuant to Penal Code section 995.[3] The trial court denied that motion as well, determining there was no "legal theory [to] support[] it."

After hearing argument by the parties, the trial court denied a grant of probation, but dismissed "under *People v. [Superior Court] (Romero)* [(1996) 13 Cal.4th 497]" the 1993 Kansas robbery conviction which had been alleged as a strike. In striking the offense, the trial court indicated it had considered "the seriousness of the present

---

[3] Penal Code section 995 allows an information to be set aside if, "before the filing thereof the defendant had not been legally committed by a magistrate" or if "the defendant had been committed without reasonable or probable cause."

offense," that no one had suffered any injuries, that the taking had involved no weapons, "the age and remoteness [of the strike]," Williams's "overall background," record, "length of prison commitments," lack of "history of violence" and age.

The trial court then imposed the upper term of three years in state prison for Williams's conviction of the unlawful driving or taking of a vehicle as alleged in count 3. For Williams's prior convictions of the unlawful taking of a vehicle pursuant to Penal Code section 666.5, the trial court imposed an additional one year. For two of the three state prison priors alleged pursuant to Penal Code section 667.5, subdivision (b), the trial court imposed consecutive terms of one year for each. The court struck the third prison prior and, in total, sentenced Williams to six years in state prison.

After sentencing him to state prison, the trial court commented, "[Williams] appears mostly other than that robbery conviction to be a thief. I think by dismissing it, I think I still [had] plenty of time to give [him] based upon the state prison priors that [he has]. I think that [will] suffice in this case . . . ." Later, after imposing sentence, the trial court stated, "I do have to send [Williams] to state prison because of the prior convictions for the strike, so it's a state prison commitment."

On May 2, 2013, Williams filed a timely notice of appeal from the judgment.

## CONTENTION

Williams contends the trial court erred by considering the Kansas state robbery conviction a serious felony or "strike under California law because [the Kansas statute] does not require the defendant to intend to permanently deprive the owner of his or her property."

## DISCUSSION

In order to qualify as a "strike" under California's Three Strikes law, a foreign conviction "must involve conduct that would qualify as a serious [or violent] felony in California. To make this determination, the court may consider the entire record of the prior conviction as well as the elements of the crime [as stated in the statute]. [Citation.]" (*People v. Avery* (2002) 27 Cal.4th 49, 53 (*Avery*).) By allowing a trial court to consider the entire record of a foreign prior (see *People v. Guerrero* (1988) 44 Cal.3d 343, 355), a

6

defendant who suffered a prior conviction in another jurisdiction will be "subject to the same punishment as a person previously convicted of an offense involving the same conduct in California." (*People v. Myers* (1993) 5 Cal.4th 1193, 1201 (*Myers*).)  In determining whether the record of a prior foreign conviction provides sufficient evidence to support imposition of the enhanced sentence provided by the Three Strikes law, the court must consider "whether, after viewing the evidence in [a] light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319, original italics, *People v. Stanley* (1995) 10 Cal.4th 764, 792, see *People v. Garrett* (2001) 92 Cal.App.4th 1417, 1433.)

In California, the statute prohibiting robbery, Penal Code section 211, provides: "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will accomplished by means of force or fear."  The statute has been interpreted as requiring the "taking of 'personal property in the possession of another against the will and from the person or immediate presence of that person accomplished by means of force or fear and *with the specific intent permanently to deprive such person of such property*.' [Citation.]" (*People v. Lewis* (2008) 43 Cal.4th 415, 464, italics added, disapproved on another ground in *People v Black* (2014) 58 Cal.4th 912, 919-920.)  It has been determined, however, that "an intent to take the property for so extended a period as to deprive the owner of a major portion of its value or enjoyment" is sufficient to satisfy the "intent requirement." (*Avery, supra,* 27 Cal.4th at p. 55.)

Both presently and at the time Williams committed robbery in Kansas, the statute prohibiting the crime stated robbery was "the taking of property from the person or presence of another by threat of bodily harm to his person or the person of another or by force." (Former Kan. Stat. Ann., § 21-3426, repealed by Laws 2010, ch. 136, § 307, eff. Jul. 1, 2011, and reenacted as Kan. Stat. Ann., 21-5420 in Laws 2010, ch. 136, § 55, eff. Jul. 1, 2011.)  "There is no specific intent required beyond the general intent to commit the act of forcible taking.  All that is required is an intentional taking of property

7

from the person or presence of another by force or the threat of bodily harm." (*State v. Thompson* (1976) 221 Kan. 165, 174.)

Had no record regarding Williams's Kansas robbery conviction been provided, we would be compelled to conclude his Kansas conviction does not amount to a prior serious felony pursuant to the Three Strikes law. However, included as part of the record on appeal is a copy of the amended complaint filed April 2, 1993. That complaint reads: "[t]hat on or about the 20th day of February, 1993, in the County of Douglas, State of Kansas, the defendant, Troy D. Williams, did then and there willfully, feloniously and unlawfully take property, to – wit: a 1993 Jeep Grand Cherokee and ten dollars ($10.00) in U.S. currency, from the person or presence of James Vestal, by force or threat of bodily harm . . . ." Because, in determining whether a foreign conviction "involve[d] conduct that would qualify as a serious felony in California[,]" we "may consider the entire record of the prior conviction," (*Avery, supra,* 27 Cal.4th at p. 53) we may consider the fact that, along with the Jeep Cherokee, Williams took from his victim $10 in cash. This fact is reflected in the charging document and the trial court's note indicating Williams "waive[d] formal reading of the Amended Complaint, at which time [he] enter[ed] his plea of guilty to Robbery, as charged therein." (*Avery,* at p. 53; *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350 [in considering whether a foreign conviction complies with the requirements of California law, this court may consider "the charging documents and no contest plea reflected in a minute order."].) From this brief description of the robbery, we can reasonably infer Williams intended to permanently deprive the victim of at least the $10 in cash.

In *People v. Riel* (2000) 22 Cal.4th 1153, 1205 (*Riel*), the appellate court concluded the trial court had properly allowed the prosecution to show defendant's Washington state crimes constituted burglary under California law. The record of the Washington crimes contained a brief description of the crimes to which the defendant had pled guilty. With regard to the first burglary, the defendant had stated he had broken into a liquor store and " '[taken] several bottles of booze.' " (*Ibid.*) With regard to the second burglary, the defendant stated he had gone into a store after it had closed and taken some

8

liquor.  (*Ibid*.)  The appellate court determined these statements "clearly showe[d] . . . the burglary convictions were based on the intent to commit theft rather than some other, nonfelonious, crime."  (*Ibid*.)  In particular, the jury could have found the necessary intent with regard to the second burglary.  The appellate court determined "[i]t [was] unlikely . . . defendant regularly entered liquor stores with innocent intent and only thereafter formed a larcenous intent.  [Citation.]"  (*Ibid*.)  Moreover, it is unlikely the defendant intended "to take the liquor only temporarily.  One normally takes liquor to drink or otherwise to dispose of it," not merely to temporarily possess it.  (*Id.* at p. 1206.)

In the present matter, Williams took during the Kansas robbery not only a Jeep, but $10 in cash from the victim.  Just as the defendant in *Riel, supra*, 22 Cal.4th 1153, could reasonably be inferred to have taken the liquor to drink or share with friends, one can reasonably infer Williams took the $10 from the victim with the intent to spend it. He did not intend to merely possess it temporarily.  Under these circumstances, although Williams suffered the prior conviction for robbery in Kansas, he should be "subject to the same punishment as a person previously convicted of an offense involving the same conduct in California."  (*Myers, supra,* 5 Cal.4th at p. 1201.)  The trial court properly concluded Williams's 1993 Kansas conviction for robbery qualified as a serious felony amounting to a strike within the meaning of the Three Strikes law and properly sentenced Williams to state prison.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KLEIN, P. J.

We concur:

KITCHING, J.                                                                                                          ALDRICH, J.

9