Filed 6/23/25 (review denied 10/1/25; reposted with Supreme Court order and statement)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G063231 |
|       v. | (Super. Ct. No. 07NF4480) |
| ANGEL EDUARDO RAMOS, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Craig E. Robison, Judge. Affirmed. Application to file amicus brief granted.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Seth M. Friedman and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

Todd Spitzer, District Attorney (Orange), Brian Fitzpatrick, Deputy District Attorney, for the District Attorney for the County of Orange as Amicus Curiae.

\*        \*        \*

Under Penal Code section 1172.6, "the focus is on examining the truth of what happened to evaluate whether to reduce an individual's sentence, so the punishment fits the crime." [1] (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 587 (*Mitchell*).) Consequently, when a trial court conducts an evidentiary hearing: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted *at any prior hearing or trial* that is admissible under current law, including witness testimony . . . ." (§ 1172.6 (d)(3), italics added.)

In 2007, Angel Eduardo Ramos and three other men were involved in a gang-related shooting. Ramos was the shooter. Ramos pleaded guilty to attempted murder, related crimes, and enhancements. One of the codefendants went to trial. A jury convicted the codefendant of attempted murder (as an aider and abettor), related crimes, and enhancements.

In 2022, Ramos filed a section 1172.6 petition seeking to vacate his attempted murder conviction. At Ramos's evidentiary hearing, the transcripts from his codefendant's trial were admitted into evidence. The trial court found Ramos to be the actual shooter and denied his petition.

Ramos does not appeal on the merits. Rather, he claims the court erred by admitting evidence from his codefendant's trial. We disagree. Based on the plain language of the statute, evidence from "*any* prior hearing or trial" is generally admissible, "including witness testimony." (§ 1172.6 (d)(3), italics added.) Additionally, a section 1172.6 proceeding is a search for the truth, and it is undisputed that the right to confront witnesses does not apply

---

[1] Assembly Bill No. 200 (Reg. Sess. 2021–2022) renumbered section 1170.95 as section 1172.6. (See Stats. 2022, ch. 58, § 10.) Subsequent undesignated statutory references are to the Penal Code. We will generally omit the word "subdivision" and its abbreviation.

at a section 1172.6 evidentiary hearing. (See *People v. Howard* (2020) 50 Cal.App.5th 727, 740 [section 1172.6 is "an act of lenity by the Legislature 'that does not implicate defendants' Sixth Amendment rights'"].)

Thus, we affirm the order of the trial court.

## I.

## FACTS AND PROCEDURAL BACKGROUND

In December 2007, Ramos was in the backseat of a car with Jose Bello. In the front passenger seat was Isaac Garza Cordero.[2] Ramos, Bello, and Cordero were all active members of a criminal street gang. Kevin G. (Kevin), was an unwitting high school student who was driving the car. Cordero directed Kevin to drive into his rival gang's territory. Cordero then directed Kevin to stop the car and turn off the headlights. Emilio D. (Emilio) was standing near the car.

Ramos rolled down the rear window and "hit up" Emilio by asking him, "Where are you from?" Emilio identified the name of his gang. Ramos then got out of the car, aimed his weapon, and fired multiple shots. Emilio was hit in his head and in his leg. Ramos got back in the car and said, "I got him." The next day, Kevin reported the incident to his teachers and to the police. Emilio did not die from the bullet wounds.

*Court Proceedings*

The Orange County District Attorney (OCDA) filed an information charging Ramos, Cordero, and Bello with one count of attempted

---

[2] The statement of facts is derived from the evidence adduced at Cordero's 2011 jury trial.

3

murder and one count of street terrorism. The OCDA further alleged gang and firearm enhancements.

In 2011, Ramos pleaded guilty to the charged crimes and admitted the enhancements. The trial court imposed a negotiated 19-year prison sentence. Bello pleaded guilty to reduced charges. Cordero went to trial, and the jury ultimately convicted him of the charged crimes, as well as the related gang and firearm enhancements.

In 2022, Ramos filed a section 1172.6 petition seeking to vacate his attempted murder conviction and to be resentenced. At the prima facie stage, the trial court set the matter for an evidentiary hearing based on a stipulation by the parties (it was not clear from the record of conviction that Ramos was the actual shooter).

Prior to Ramos's evidentiary hearing, the OCDA filed a motion to admit the transcripts from Cordero's jury trial. Over Ramos's objection, the trial court granted the motion. The parties introduced no additional evidence at the hearing. After reviewing the transcripts, the court ruled on Ramos's section 1172.6 petition in a written order:

"The evidence establishes that petitioner was the only person armed during the incident and instigated a confrontation in rival gang territory by rolling down his car window and asking the victim where he was from. Petitioner was the only person to exit the vehicle to shoot at the victim. Witness Kevin . . . saw petitioner holding a firearm immediately after hearing several gunshots. When petitioner got back in the group's car, he said, 'I got him.' Based on this evidence petitioner clearly took a direct step toward killing the victim and acted with specific intent to kill . . . . Since petitioner is guilty of attempted murder under current law beyond a reasonable doubt, he is ineligible for resentencing."

4

On appeal, Ramos claims the trial court erred by admitting the transcripts from his codefendant's trial. The Attorney General concedes the issue.[3] The OCDA filed an amicus curiae brief in opposition.

## II.

## DISCUSSION

Ramos claims that when a trial court conducts an evidentiary hearing under section 1172.6, the court can only admit evidence from a prior hearing or trial if the petitioner was a party to that hearing or trial. We disagree. The plain language of the statute includes no such restriction.

Issues of statutory interpretation are pure questions of law that we review de novo. (*People v. McDavid* (2024) 15 Cal.5th 1015, 1023.)

In this discussion, we shall: A) review the principles of statutory interpretation; B) consider section 1172.6 (d)(3) as written; and C) analyze the statute as applied to the principles of statutory interpretation.

### A. Principles of Statutory Interpretation

When interpreting a statute, a court's role "is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

"We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the

---

[3] "We are not bound to accept a party's concession on a question of law." (*Sellers v. Superior Court* (2024) 104 Cal.App.5th 468, 478, fn. 4.)

statute's plain meaning governs.'" (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837–838.)

Courts may neither insert words nor delete words in an unambiguous statute; the drafting of statutes is solely a legislative power. (*People v. Hunt* (1999) 74 Cal.App.4th 939, 945–946.) "In construing this, or any, statute, our office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention that does not appear in its language." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.)

"Statutory language is not considered in isolation. Rather, we 'instead interpret the statute as a whole, so as to make sense of the entire statutory scheme.'" (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1261.) Courts "must interpret legislative enactments so as to avoid absurd results." (*People v. Torres* (2013) 213 Cal.App.4th 1151, 1158.)

*B. Section 1172.6 (d)(3)*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (SB 1437). The Legislature amended sections 188 and 189, which substantially narrowed the liability of accomplices to murder: "It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (Stats. 2018, ch. 1015, § 1, subd. (d).)

"With this purpose in mind, [the Legislature] 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a

major participant in the underlying felony who acted with reckless indifference to human life.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)

The Legislature also added former section 1170.95, which created a process for those convicted of murder under now obsolete accomplice liability theories to seek vacatur and resentencing. Effective January 1, 2022, the Legislature revised section 1170.95 through the passage of Senate Bill No. 775 (SB 775). Petitioners who were convicted of attempted murder and manslaughter under now obsolete theories may also seek relief. (§ 1172.6 (a).)

"Petitioners seeking relief under section 1172.6 must, first, file a facially valid petition that states the statutory requirements for relief (*id.*, subd. (b)), and second, make a 'prima facie showing' (*id.*, subd. (c)), before a court must issue an order to show cause and hold an evidentiary hearing on the ultimate question of resentencing at which the People will bear the burden of defending a conviction under the amended law (*id.*, subd. (d))." (*People v. Patton* (2025) 17 Cal.5th 549, 600.)

As originally drafted, former section 1170.95 (d)(3) provided: "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges. *The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.*" (Stats. 2018, ch. 1015, § 4, italics added.)

Through SB 775, the Legislature struck the above italicized phrase. The statute now reads, in relevant part: "The admission of evidence

7

in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule.[4] The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6 (d)(3).)

*C. Application and Analysis*

When interpreting a statute, we give the words of the statute "a plain and commonsense meaning" unless the statute specifically defines the words to give them a special meaning. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 577–578.) The plain and commonsense meaning of the adjective "any" is "used to indicate one selected *without restriction.*" (Webster's Collegiate 11th Dict. (2003) p. 56, col. 2, italics added.)

Under section 1172.6 (d)(3), evidence from "*any* prior hearing or trial" may be admitted at the evidentiary hearing, with a restriction that the evidence must also be "admissible under current law." (Italics added.) That is, there may be some evidence that was admitted at a prior hearing or trial

---

[4] Under section 872 (b), qualified peace officers at preliminary hearings may ordinarily testify as to statements made to them by others (Prop. 115 testimony). (*Montez v. Superior Court* (1992) 4 Cal.App.4th 577, 584 ["the provisions of Proposition 115 which permit the use of hearsay at preliminary hearings . . . are but another exception to the hearsay rule"].)

that would <u>not</u> be admissible under current law due to intervening changes in the law. (See, e.g., *People v. Sanchez* (2016) 63 Cal.4th 665, 686 (*Sanchez*) [under current law, a gang expert cannot relate case-specific hearsay to support the expert's opinion].) The only other explicit restriction under section 1172.6 (d)(3) is that Prop. 115 testimony from a preliminary hearing generally cannot be admitted into evidence.

Here, at Ramos's evidentiary hearing, the trial court admitted into evidence the transcripts from Cordero's trial. Ramos does not contend that any of the evidence relied on by the court at the evidentiary hearing is now inadmissible due to any intervening changes in the law. Further, Ramos does not contend that any Prop. 115 testimony was improperly admitted.

Based on the plain language of the statute, we hold that the trial court did not commit an evidentiary error when it admitted the transcripts from Cordero's prior trial at Ramos's evidentiary hearing under section 1172.6 (d)(3). Thus, we affirm the court's order that denied Ramos's section 1172.6 petition for vacatur and resentencing.[5]

Ramos argues in this appeal, as he did in the trial court, that the Legislature intended to restrict the admission of prior "testimonial evidence" in an evidentiary hearing under section 1172.6, "to those hearings or trials in which the defendant was a party." We disagree.

Under well established and long standing rules of statutory interpretation, we cannot assume the Legislature intended to include an

---

[5] We are certifying this opinion for publication because this appears to be an issue of first impression. (See Cal. Rules of Court, rule 8.1105(c)(2) [an opinion "should be certified for publication" when it "[a]pplies an existing rule of law to a set of facts significantly different from those stated in published opinions"].)

additional restriction on the admission of evidence that does not appear in the language of the statute. (See *Vasquez v. State of California, supra,* 45 Cal.4th at p. 253 ["We may not rewrite the statute to conform to an assumed intention that does not appear in its language"].)

Under section 1172.6 (d)(3), the Legislature explicitly allowed for testimonial evidence to be admitted from "any prior hearing or trial" so long as the evidence "is admissible under current law." The statute does <u>not</u> include a further restriction that the petitioner must also have been a party to that prior hearing or trial. Thus, we reject Ramos's notion regarding the Legislature's intent, which, in fact, appears to be directly at odds with the Legislature's broadly written language in section 1172.6 (d)(3). [6]

Our holding is consistent with another appellate court that held that a defendant's sworn statements at a parole board hearing may be properly admitted at an evidentiary hearing under section 1172.6. (See *Mitchell, supra,* 81 Cal.App.5th at pp. 580–581.) In *Mitchell*, defendant participated in a robbery in which a victim was killed. (*Id.* at p. 580.) Defendant was convicted of murder, and received a lengthy prison sentence. He later filed a section 1172.6 petition. (*Id.* at p. 583.) At an evidentiary hearing, the People introduced defendant's sworn statements from a prior parole hearing in which he described his role in the underlying crime. (*Id.* at p. 581.) The trial court denied the petition after finding defendant "was a

---

[6] Nonetheless, we acknowledge that there is a certain commonsense appeal to the argument that the language in section 1172.6 (d)(3) refers only to "evidence previously admitted at any prior hearing or trial" in which the petitioner was involved—i.e., the petitioner was a party and had an opportunity to cross-examine witnesses against him or her. Therefore, we urge the Legislature to amend section 1172.6 (d)(3) if it did not intend for transcripts from a separately conducted trial as to a codefendant to be considered during an evidentiary hearing under this section.

major participant who acted with reckless indifference to human life." (*Id* at. p. 586.) On appeal, defendant argued "that the trial court erred by considering the parole hearing transcript." (*Ibid*.) The Court of Appeal disagreed: "The point of this petitioning process is to find truth and to do justice. In this quest, the facts must matter. It is fair to permit the court to evaluate how [defendant] described his role in his crime." (*Id*. at p. 580.)

"The overall goal of the petitioning process here is to make the punishment fit the crime in a precise and particularized way. The Legislature sought to ensure murder culpability is commensurate with a person's individual actions. [Citation.] [¶] That takes facts. [¶] The Legislature responded to long-standing critiques of murder doctrine by creating a process to ameliorate past excesses that created sentences judged to be too long and to resentence *where appropriate*. So the focus is on examining the truth of what happened to evaluate whether to reduce an individual's sentence so the punishment fits the crime." (*Mitchell, supra,* 81 Cal.App.5th at p. 587.)

"It would contravene this goal of individualizing punishment for courts to blind themselves to the individualized facts of the case. This appeal illustrates how a parole transcript can be a valuable source of information about a particular defendant's actions, and thus potentially important in the work of aligning individual punishment with individual culpability. This work benefits from the kind of evidence a parole transcript can provide." (*Mitchell, supra,* 81 Cal.App.5th at pp. 587–588.)

Here, similar to *Mitchell*, the admission of the transcripts from Cordero's trial aligns with the legislative purpose of section 1172.6, which is to ensure that a petitioner's punishment is commensurate with his actions in the underlying crime. The transcripts revealed that Ramos was the actual shooter who acted with the intent to kill, and therefore he is ineligible for

11

relief under section 1172.6. As in *Mitchell,* it would contravene the Legislature's purpose—and the plain language of section 1172.6—for the trial court to have blinded itself to the facts of this case by failing to consider "evidence previously admitted at *any* prior hearing or trial that is admissible under current law, including witness testimony." (§ 1172.6 (d)(3), italics added; see also *People v. Torres*, *supra,* 213 Cal.App.4th at p. 1158 ["we must interpret legislative enactments so as to avoid absurd results"].)

Our holding is also consistent with another appellate court that held that grand jury transcripts may be properly admitted at an evidentiary hearing under section 1172.6. (*People v. Robinson* (2024) 106 Cal.App.5th 854 (*Robinson*), review granted Feb. 26, 2025, S288606.) In *Robinson*, defendant pleaded no contest to attempted murder. (*Id.* at pp. 859–860.) Years later, defendant filed a section 1172.6 petition. (*Id.* at p. 861.) At an evidentiary hearing the trial court admitted into evidence underlying grand jury transcripts, which showed defendant was the actual shooter. (*Id.* at pp. 861–864.) The trial court denied defendant's section 1172.6 petition. (*Id.* at p. 860.) On appeal, defendant argued that "the trial court erred in considering testimony from grand jury transcripts." (*Ibid.*) The Court of Appeal disagreed. The appellate court held "that testimony from grand jury proceedings constitutes evidence previously admitted at 'any prior hearing' as proscribed by section 1172.6, subdivision (d)(3)." [7] (*Id.* at p. 872.)

"Since the primary purpose of . . . a section 1172.6 hearing is to

---

[7] It appears, as in this case, the Attorney General agreed with the defendant's position, and the local district attorney filed an amicus curiae brief in opposition. (*Robinson, supra,* 106 Cal.App.5th at p. 860.) The same is true in *People v. Ocobachi* (2024) 105 Cal.App.5th 1174, 1182–1183, although the *Ocobachi* court rejected the argument of amicus curiae (the local district attorney) that grand jury testimony is admissible under section 1172.6 (d)(3).

determine a petitioner's role in the crime of which he or she was convicted, it seems to us that reliance on grand jury testimony assists in accomplishing that purpose. Should a petitioner wish to challenge that evidence, section 1172.6 allows him or her to do so by offering new or additional evidence at the evidentiary hearing." (*Robinson*, *supra*, 106 Cal.App.5th at p. 870.) "We also find that trial judges are well versed in judging the credibility of evidence and attributing whatever weight they deem appropriate to 'prior hearing' testimony." (*Ibid*.)

"While it may be tempting to say that a defendant's lack of participation in a grand jury proceeding renders the proceeding not a 'hearing' for purposes of section 1172.6, we believe such is misguided. We are reminded that the section 1172.6 [evidentiary] hearing is not a trial, criminal prosecution, or subsequent retrial. [Citation.] It is a postconviction collateral proceeding, the scope of which is limited to the issues made relevant by the amended law of murder. [Citation.] Many of the protections under the Sixth Amendment do not apply to the petitioning process under section 1172.6." (*People v. Robinson, supra,* 106 Cal.App.5th at pp. 870–871) The *Robinson* court noted that defendant's right to confront the witnesses against him did not apply at evidentiary hearings under section 1172.6. (*Id.* at p. 871.)

Here, as in *Robinson*, Ramos did not participate in the prior proceeding in which his codefendant Cordero was convicted as an aider and abettor. But if Ramos wanted to challenge any of the prior testimony admitted from Cordero's trial, he certainly had the opportunity to do so at the evidentiary hearing. Ramos could have subpoenaed witnesses, made appropriate arguments to the trial court, or he could have testified on his own behalf. (See § 1172.6 (d)(3) ["The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens"].) Indeed, if

13

Ramos believed there was some relevant evidence from *any other prior hearing or trial* that was admissible under current law, he too could have sought to introduce that prior testimony. (See § 1172.6 (d)(3) ["the court *may* consider evidence previously admitted at any prior hearing or trial that is admissible under current law"], italics added.)

Ramos also argues that the trial court erred in admitting testimonial evidence from Cordero's trial for its truth because the testimony constitutes inadmissible hearsay under the Evidence Code. We disagree.

Hearsay evidence is generally "understood as an out-of-court statement offered for the truth of its content." (*Sanchez, supra,* 63 Cal.4th at p. 674.) Hearsay evidence is normally excluded under the hearsay rule. (Evid. Code, § 1200.) However, there are numerous exceptions to the hearsay rule within the Evidence Code, and there are other hearsay exceptions located outside of the Evidence Code. (See, e.g., § 872, subd. (b); see also *People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158 (*Davenport*) [holding that a preliminary hearing transcript from an underlying murder, which contained non-Prop 115 testimony identifying petitioner as the shooter, was admissible hearsay evidence at a section 1172.6 evidentiary hearing].)

"In effect, what section 1172.6, subdivision (d)(3) does is create a new hearsay exception applicable specifically to [evidentiary] hearings in section 1172.6 resentencing proceedings. 'Most hearsay exceptions are located in Evidence Code §§ 1220 to 1390. They exist, however, in other codes as well.' (Simons, Cal. Evidence Manual (Dec. 2022) § 2:20.) Section 872, subdivision (b), is an example. Section 1172.6, subdivision (d)(3), contains another, broader exception for former testimony given at a preliminary hearing, but carves out an exception for section 872, subdivision (b), testimony. Thus, as we read section 1172.6, subdivision (d)(3), the rules of

14

evidence apply to hearings held under section 1172.6, subdivision (d); under those rules, hearsay is inadmissible in the absence of an exception; and the pertinent exception here is the clause in section 1172.6, subdivision (d)(3), stating that 'except that the court may consider evidence previously admitted at any prior hearing [or trial that is admissible under current law, including witness testimony].'" (*Davenport, supra,* 95 Cal.App.5th at p. 1158.)

Ordinarily, under the standard Evidence Code hearsay exception, in order to introduce witness testimony from a prior hearing or trial, the proponent of the evidence must first establish (1) the witness is unavailable to testify in the present proceeding, and (2) the party against whom the testimony is being offered had the opportunity to cross-examine that witness at that prior hearing or trial. (Evid. Code, § 1291.) However, Penal Code section 1172.6 (d)(3) acts as a broader exception to the hearsay rule because it does not include those two limitations provided for in Evidence Code section 1291. (See *Davenport*, *supra*, 95 Cal.App.5th at pp. 1158–1159.)

Our decision on this point is consistent with an earlier opinion by this court, which held that prior witness testimony is admissible at a section 1172.6 evidentiary hearing without a showing of witness unavailability under Evidence Code section 1291. (See *People v. Cody* (2023) 92 Cal.App.5th 87 (*Cody*).) In *Cody*, defendant was convicted of felony murder at a jury trial. He was sentenced to life in prison. Defendant later filed a section 1172.6 petition, and the court issued an order to show cause. (*Id.* at pp. 92–93.) Prior to the evidentiary hearing, the court reviewed the underlying trial transcripts, and found defendant ineligible for relief under a valid murder theory. (*Id.* at p. 101.) On appeal, defendant argued, in part, that the trial court committed an evidentiary error because "when a trial court conducts an evidentiary hearing, the prosecution must always first make a showing that a witness is

15

unavailable before his or her former testimony at trial can be admitted into evidence at the evidentiary hearing." (*Id.* at p. 103.)

In *Cody*, this court disagreed with defendant's argument, finding that section 1172.6 "has an explicit [hearsay] exception that provides for the admission of former testimony: 'The admission of evidence in the hearing shall be governed by the Evidence Code, *except that* the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including *witness testimony . . . .*' (§ 1172.6 (d)(3), italics added.)" (*Cody, supra,* 92 Cal.App.5th at p. 104.)

"Section 1172.6, subdivision (d)(3), does contemplate that there may be some evidence that was admitted at a former trial that would <u>not</u> be admissible under current law. (See, e.g., [*Sanchez, supra,* 63 Cal.4th at p. 686] [an expert cannot relate case-specific out-of-court statements to support the expert's opinion].) However, that does not mean that all witness testimony at a prior trial cannot be admitted without the prosecution making a showing of witness unavailability." (*Cody, supra,* 92 Cal.App.5th at p. 104.)

"Were we to adopt [defendant's] interpretation of section 1172.6, it would mean we would have to disregard the statute's plain language. Further, it would mean that all section 1172.6 evidentiary hearings would effectively become new court trials. As another appellate court recently stated, that is plainly <u>not</u> what the Legislature intended. (See *People v. Clements* [(2022)] 75 Cal.App.5th [276,] 297 [the Legislature did not choose to grant qualifying offenders under § 1172.6 a new trial, but rather the Legislature chose a procedure 'requiring trial judges to decide the critical factual questions based—at least in some cases—on a cold record'].)" (*Cody, supra,* 92 Cal.App.5th at p. 104.)

Consistent with *Cody*, we find that the People were not required

16

to show the unavailability of the witnesses from Cordero's 2011 trial, nor were they required to show that Ramos had the "'opportunity to cross-examine'" those witnesses under Evidence Code section 1291. (See *Cody, supra,* 92 Cal.App.5th at p. 103.) This is because the Legislature crafted a new and broader hearsay exception for former witness testimony being introduced at evidentiary hearings under section 1172.6. (See *Davenport, supra,* 95 Cal.App.5th at p. 1158 ["what section 1172.6, subdivision (d)(3) does is create a *new* hearsay exception applicable specifically to [evidentiary] hearings in section 1172.6 resentencing proceedings"], italics added.)

To reiterate and conclude, under the plain meaning of section 1172.6 (d)(3), we hold that a trial court may properly admit transcripts from a codefendant's trial at a petitioner's evidentiary hearing.[8] Such evidence furthers the purposes of the statute, which is to search for the truth and to ensure that a petitioner's culpability is commensurate with his actions. The testimonial evidence does not violate the Evidence Code, nor does it implicate a petitioner's Sixth Amendment right to confront the witnesses. And to ensure fundamental fairness, the statute allows the petitioner to "offer new or additional evidence" at the evidentiary hearing. (§ 1172.6 (d)(3).)

The Attorney General makes a slippery slope argument by suggesting that our holding means that "as long as the evidence was

---

[8] The parties and amicus make conflicting arguments based on the legislative history of section 1172.6. But since we are finding that the statute is clear and unambiguous, we need not address those arguments in this appeal. (See *People v. Bradley* (2012) 208 Cal.App.4th 64, 83 ["Courts must look first to the plain words of an enactment and, if there is no ambiguity in the language, must presume the legislative body meant what it said without resort to legislative history"]; *People v. Overstreet* (1986) 42 Cal.3d 891, 895 ["When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it"].)

previously admitted against someone, somewhere then it is admissible against a petitioner" at a section 1172.6 evidentiary hearing. We disagree.

Again, the statute provides: "The admission of evidence in the hearing *shall be governed by the Evidence Code*, except that the court *may* consider evidence previously admitted at any prior hearing or trial that is admissible under current law . . . ." (§ 1172.6 (d)(3), italics added.)

We interpret the statute to mean that evidence that is not relevant and/or probative at a section 1172.6 evidentiary hearing would still be subject to exclusion as "governed by the Evidence Code." (§ 1172.6 (d)(3); see, e.g., Evid. Code, § 352; see also *Robinson, supra*, 106 Cal.App.5th at p. 870 ["trial judges are well versed in . . . attributing whatever weight they deem appropriate to 'prior hearing' testimony"].) We note that the evidence from Cordero's trial was certainly relevant and probative. The uncontradicted evidence proved beyond a reasonable doubt that Ramos is guilty of attempted murder under a current and valid legal theory (i.e., he was the shooter).

## III.

## DISPOSITION

We affirm the order of the trial court, which was a denial of Ramos's section 1172.6 petition.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


SCOTT, J.

Court of Appeal, Fourth Appellate District, Division Three - No. G063231

**S292224**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

ANGEL EDUARDO RAMOS, Defendant and Appellant.

_____

The petition for review is denied.

(See Concurring Statement by Justice Liu)

_____/s/_____

*Chief Justice*

PEOPLE v. RAMOS

S292224

Concurring Statement by Justice Liu

Defendant Angel Eduardo Ramos and three others were involved in a gang-related shooting in 2007. Ramos, Jose Bello, and Isaac Cordero were driven into a rival gang's territory. One of them shot a supposed member of that rival gang.

Ramos, Bello, and Cordero were jointly charged for attempted murder and street terrorism with gang and firearm enhancements. Following trial, a jury convicted Cordero. Ramos and Bello pleaded guilty. Pursuant to a plea agreement, Ramos admitted the charges and enhancements and was sentenced to 19 years in prison.

In 2022, Ramos sought resentencing under Penal Code section 1172.6. (All further undesignated statutory references are to the Penal Code.) The Legislature had amended the law of murder in order to ensure that " 'murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448, quoting Stats. 2018, ch. 1015, § 1(f).) Section 1172.6 provides a "procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957.)

Ramos, it appeared, had a colorable claim. "[I]t was not clear from the record of conviction that Ramos was the actual

1

shooter." (*People v. Ramos* (2025) 112 Cal.App.5th 174, 181 (*Ramos*).) In his plea, he admitted to aiding and abetting the attempted killing, to being an active member of a gang, and to having committed the crime with specific intent to promote criminal conduct by gang members. He also admitted that a principal in the crime used a gun. He did not necessarily admit to being the shooter. (Cf. *People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1405.) Nor did he stipulate to having specific intent to kill the victim, which the new murder statute confirmed was a required element of attempted murder.

The trial court denied relief, finding that Ramos was guilty of attempted murder beyond a reasonable doubt because he was "the only person to exit the vehicle to shoot at the victim." The sole basis for that conclusion was testimony from *Cordero*'s trial — a trial Ramos was not present for — and, specifically, Cordero's statements pointing the finger at Ramos. The Court of Appeal affirmed.

It strikes me as odd that someone could be found guilty of attempted murder beyond a reasonable doubt by a codefendant's self-serving assertion that was untested by the accused. After all, a codefendant often has an incentive to shift the blame to any accomplices. To ensure the accuracy of criminal adjudications, the law generally affords defendants the right to cross-examine hostile witnesses. (See, e.g., *California v. Green* (1970) 399 U.S. 149, 158 [describing cross-examination as the " 'greatest legal engine ever invented for the discovery of truth' "]; see generally U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) Ramos had no such opportunity, and his petition

was denied solely because of a codefendant's statement given during police interrogation and untested by cross-examination.

The Attorney General conceded below that this was error (*Ramos*, *supra*, 112 Cal.App.5th at p. 181), and the Court of Appeal urged the Legislature to change the law if it did not intend this outcome (*id.* at p. 185, fn. 6).

While this court has not specified what constitutional rights apply to petitioners seeking relief at a section 1172.6 hearing, they almost certainly have a right to due process because their liberty is at stake. (See, e.g., *People v. Silva* (2021) 72 Cal.App.5th 505, 552; *People v. Del Rio* (2023) 94 Cal.App.5th 47, 53–55.) Those due process rights may well include a right to cross-examine witnesses whose absence is not justified by good cause, where the evidence is critical to the prosecution's ability to carry its burden of "prov[ing], beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder" under current law. (§ 1172.6, subd. (d)(3).) As we have observed, "a 'nontestifying codefendant's extrajudicial self-incriminating statement that inculpates the other defendant is generally unreliable and hence inadmissible as violative of that defendant's right of confrontation.'" (*People v. Jennings* (2010) 50 Cal.4th 616, 652, quoting *People v. Anderson* (1987) 43 Cal.3d 1104, 1120–1121.) The right to cross-examine witnesses, in at least some circumstances, derives from the due process clause rather than the confrontation clause. (See, e.g., *People v. Gray* (2023) 15 Cal.5th 152, 164.)

Whatever the merits of these arguments, however, they were not raised in the proceedings below. Ramos articulated his objections to the transcripts from Cordero's trial as a matter of statutory interpretation and under the state and federal

confrontation clauses, not the due process clause. For that reason, the Court of Appeal in this case did not assess any due process concern.

In any event, I question whether this result was intended by the Legislature. True, the Legislature used broad language regarding the type of evidence admissible at a section 1172.6 hearing. It chose to permit evidence from "any prior hearing or trial" to be admitted at a section 1172.6 hearing so long as the evidence is "admissible under current law" and not from a preliminary hearing absent a separate exception to the prohibition on hearsay. (§ 1172.6, subd. (d)(3).) By contrast, under the prior statute, parties at the hearing could "rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Former § 1170.95, subd. (d)(3).) So, one might reason, when the Legislature replaced this language with the current language, it must have anticipated admitting evidence from hearings or trials beyond those in the petitioner's record of conviction. (See *Ramos*, *supra*, 112 Cal.App.5th at pp. 183–185.)

However, the legislative history does not support that conclusion. As introduced, Senate Bill No. 775 (2021–2022 Reg. Sess.) did not replace the original language about the record of conviction. (Sen. Bill No. 775 (2021–2022 Reg. Sess.) § 2, as introduced Feb. 19, 2021.) An amendment by the Senate would have applied the Evidence Code to hearings under what is now section 1172.6. (See Sen. Amend. to Sen. Bill No. 775 (2021–2022 Reg. Sess.) § 2, May 20, 2021.)

That amendment, in turn, triggered concern from the Assembly. A legislative analyst pointed out that applying the Evidence Code to a hearing could mean that "a statement in the

4

record of conviction that is offered to prove the truth of the matter stated would have to fall within an exception to the hearsay rule in order to be admissible at the hearing." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 775 (2021–2022 Reg. Sess.) as amended July 6, 2021, p. 10.) The result, the analyst warned, was that parties might be "required to recall witnesses from the trial" to testify at the hearing, "even where there is a prior transcript of the trial testimony as part of the record of conviction." (*Ibid.*) Although such evidence might fall under a hearsay exception, the analyst noted that the prosecution would have to "prove witness unavailability in order to use prior testimony from the record of conviction" and so urged the author to "consider clarifying this point." (*Id.* at p. 11.) The Legislature then added the current language.

The successive bill language shows the Legislature focused on two goals: ensuring adequate evidentiary safeguards for the hearing and ensuring the petitioner's record of conviction would be admissible. The Legislature does not appear to have intended to allow evidence from proceedings from which the petitioner was absent, and courts may well interpret the statute this way. Nevertheless, the Legislature may wish to amend section 1172.6, subdivision (d)(3) to make the point clear.


**LIU, J.**


**I Concur:**
**EVANS, J.**